IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WILLIAM J. WOODS,                                              Case No.

       Plaintiff

v.                                                             JURY TRIAL DEMANDED

NORTHSTAR LOCATION SERVICES, LLC
a New York Limited Liability Company

       Defendant.
_____/

COMPLAINT FOR DAMAGES WITH JURY TRIAL DEMAND

I. INTRODUCTION

1. This is an action for damages brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq* (hereinafter "FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, *et seq* (hereinafter "FCCPA"); these laws prevent debt collectors and "persons" from, *inter alia*, engaging in abusive, deceptive, harassing, and unfair collection practices.

II. JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, 1367, and Fla. Stat. § 559.77(1).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d), as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

III. PARTIES

4. Plaintiff, WILLIAM J. WOODS (hereinafter "Plaintiff"), is a natural person who resides in the County of Hillsborough, State of Florida, and is a "consumer" as that term is

defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(2), and is also a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant, NORTHSTAR LOCATION SERVICES, LLC (hereinafter "Northstar" or "Defendant"), is a for-profit entity organized under the laws of the state of New York, with its principal place of business located at 4285 Genesee Street, Cheektowaga, NY 14225; Defendant is a "debt collector," as that term is defined by 15 U.S.C. § 1692a(6) and Fla. Stat. § 559.55(6), as, in the regular course of its business, it collects or attempts to collect debts owed or due or asserted to be owed or due another, and is also an "out-of-state consumer debt collector," as that term is defined by Fla. Stat. § 559.55(8).

IV.   FACTUAL ALLEGATIONS

-Factual Background-

6. Prior to the account being assigned to Defendant for collection, the original creditor, Barclays Bank, made an offer to settle with Plaintiff for the lump sum of $3,656.00.

7. Plaintiff was interested in accepting the creditor's offer but when he contacted the creditor in an attempt to settle the account per their settlement terms he was advised that there was a deadline to accept which he had missed by only a few days.

8. Following this phone conversation with a representative of Barclays, the account was assigned to Defendant Northstar for collection.

-First Phone Call; May 5, 2011-

9. On or about May 5, 2011 Plaintiff received a call from a male representative of Defendant.

10. This representative informed Plaintiff that he was calling from Northstar Services, which is a collection agency, and that Plaintiff owed its client about $12,468.85.

11. Plaintiff advised the representative that Barclays had made an offer to settle for $3,656 and that he would happy to pay that amount to settle, if Barclays would still honor the terms.

12. The representative place Plaintiff on hold until a second representative came on the line, advising Plaintiff that the lowest offer that Defendant could accept would be $4,998.00.

13. Plaintiff explained that he could not afford that amount and asked about a payment plan.

14. Defendant's representative explained that a payment plan would require that the full amount be paid back and he and Plaintiff were unable to agree to a settlement.

15. Plaintiff was advised by the representative that, if an agreement is not worked out within thirty days, then the account will be sent back to Barclays Bank's legal department for them to "[go] after" Plaintiff.

-Second Phone Call; May 12, 2011-

16. On or about May 12, 2011 Plaintiff received another phone call from Defendant.

17. Plaintiff was not available when Defendant called so a message was left with Plaintiff's son for Plaintiff to call Defendant back.

18. At approximately 3:15pm when Plaintiff returned the call, he spoke with a male representative who, at first, started out with a nice attitude towards Plaintiff, though his demeanor and tone quickly changed.

19. The representative became fairly "aggressive" with Plaintiff when Plaintiff was not receptive to the payment plan terms that were being offered.

20. The representative transferred the call to his manager, Brian, who began attempts to work out a payment plan with Plaintiff to settle the account.

21. Brian also became aggressive and irritated with Plaintiff when a payment plan was not worked out.

22. Brian wanted Plaintiff to pay the full amount of the debt which Plaintiff could not afford to do.

23. Plaintiff advised Brian that if a payment plan is not worked out, then he has no other choice but to be sued for the money and then he would have to file for bankruptcy.

24. Brian advised Plaintiff that, if he filed for bankruptcy, then Plaintiff would lose his home.

25. Plaintiff questioned this statement by stating his belief that it was against Florida law for creditors to take one's homestead.

26. Brian responded by stating, "We'll see," and he then hung up the phone

-Third Phone Call; May 16, 2011-

27. On or about May 16, 2011 Plaintiff received a call from a male representative of Defendant by the name of "Tony" or "Anthony."

28. Tony was very aggressive with Plaintiff from the onset of the phone conversation.

29. Tony demanded that Plaintiff pay the full amount owed and Plaintiff advised that he is not able to do that and inquired as to whether Defendant could honor Barclay's previous offer to settle.

30. Tony responded to Plaintiff that there was no chance of that offer being renewed.

31. Tony then brought up the fact that Plaintiff owned a residence worth approximately $100,000.00, implying that Plaintiff should sell his home in order to pay this debt.

32. Tony then asked Plaintiff whether he was still paying $337.00 per month for his automobile loan payment in an effort to guilt Plaintiff into agreeing to a payment plan with him.

33. Plaintiff then attempted to explain to Tony how this debt arose, specifically that Plaintiff's son applied for this credit card many years ago, using Plaintiff's credit to "co-sign" for this account, possibly without Plaintiff's permission.

34. Plaintiff advised that, despite the fact that his son may have applied for the credit card without Plaintiff's permission, Plaintiff would still be interested in trying to settle this dispute, without any issues caused for his son.

35. During this explanation, Tony would speak over Plaintiff, not allowing Plaintiff to get many words out.

36. Tony said to Plaintiff that he didn't care to hear what Plaintiff had to say.

37. Then, Tony stated to Plaintiff that Plaintiff's son committed a felony offense of identity theft, and that Defendant would charge Plaintiff with "aiding and abetting" a felon.

38. Plaintiff was shocked and appalled by this statement and tried to question Tony about how this is possible.

39. Tony continued to speak over Plaintiff and Plaintiff could not deal with the stress of Tony's threat to charge Plaintiff, so Plaintiff ended the call.

-Common Allegations-

40. Defendant Northstar was attempting to collect a defaulted obligation originally owed to Barclays Bank Delaware, account ending in 8039; this debt was incurred for personal, family, or household purposes, and is therefore a "debt" or "consumer debt," as those terms are defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(1).

41. It is alleged that Defendant's actions were performed with the intent to coerce Plaintiff into paying a defaulted consumer debt.

42. All acts or omissions of the employees/agents of Defendant were performed within the scope of their respective employment/agency, thus subjecting Defendant to vicarious liability for these acts under the doctrine of *respondeat superior*.

43. Defendant's attempts to collect this debt caused Plaintiff mental anguish in the forms of stress, worry, loss of sleep, and fear of being charged with a federal offense and incarcerated.

## V. CLAIMS FOR RELIEF

### -Count I-
### Violations of the Federal Fair Debt Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 43.

44. The foregoing acts and omissions of Defendant and its employees/agents constitute numerous and several violations of the FDCPA, including, but not limited to, 15 U.S.C. §§ 1692b, 1692c(a)(1), 1692c(b), 1692d generally, 1692e generally, 1692f generally, and 1692g(a).

45. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and recovery for actual damages, statutory damages, and attorney's fees and costs.

### -Count II-
### Violations of the Florida Consumer Collection Practices Act

Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 43.

46. The foregoing acts and omissions of Defendant and its employees/agents constitute violations of the FCCPA, including, but not limited to, Fla. Stat. §§ 559.72(4), 559.72(5), and 559.72(7).

47. As a result of Defendant's violation of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery for actual damages, statutory damages, punitive damages, and attorney's fees and costs.

## VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendant for the following:

a. Equitable relief in the form of a Declaratory Judgment that Defendant's acts constituted violations of the FDCPA and FCCPA, pursuant to Fla. Stat. § 559.77(2);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and Fla. Stat. § 559.77(2);

c. Statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A) and Fla. Stat. § 559.77(2);

d. Punitive damages, pursuant to Fla. Stat. § 559.77(2);

e. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3) and Fla. Stat. § 559.77(2); and

f. Such other and further relief that this Court may deem just and proper.

Respectfully submitted,

/s/ Joseph B. Battaglia
G. Donald Golden, Fla. Bar No.: 0137080
don@brandonlawyer.com
David S. Bromley, Fla. Bar No.: 0155349
david@brandonlawyer.com
Joseph B. Battaglia, Fla. Bar No. 0058199

        joe@brandonlawyer.com
        THE GOLDEN LAW GROUP
        808 Oakfield Drive, Suite A
        Brandon, Florida 33511
        Telephone:  (813) 413-8700
        Facsimile:   (813) 413-8701
        Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

        /s/ Joseph B. Battaglia
        Joseph B. Battaglia, Fla. Bar No. 0058199